IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANTONIO RAMOS TRUJILLO, <br><br> Plaintiff <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant | CIVIL 04-1449 (HL) |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 17, 2004, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. The defendant filed a memorandum in support of the final decision on January 27, 2005, (Docket No. 10) and plaintiff filed a memorandum against such final decision on May 23, 2005. (Docket No. 14.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before December 18, 2002, the date of the final decision. Plaintiff last meets the earnings requirements for disability benefits under the Social Security Act on March 30, 2006, but not after that date. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, the administrative law judge entered the following findings:

CIVIL 04-1449 (HL)                           2

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
2. The claimant has not engaged in substantial gainful activity since the alleged onset fo disability.
3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of the Regulation No. 4.
5. The Administrative Law Judge finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
6. The Administrative Law Judge has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
7. The claimant has the following residual functional capacity: lift, carry, push, and pull a maximum of ten pounds at a time and occasionally lifting or carrying articles like dockets files, ledgers, and small tolls.  He can stand and walk for[] up to 2 hours and sit for 6 within an 8-hour workday.  Due to an emotional condition, the claimant cannot be required to perform complex, detailed or skilled tasks.
8. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).
9. The claimant is a "younger individual" (20 CFR § 404.1563).
10. The claimant has a "high school education" (20 CFR § 404.1564).
11. The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).
12. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).
13. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.22 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as inspector and/or labeler in the post manufacturing area of any industry, as stated by the vocational expert.
14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 6-8.

CIVIL 04-1449 (HL)                              3

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). Partial disability does not qualify a claimant for benefits. See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot, a finding of disability will follow. See 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. See Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancelotta v. Secretary of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986); Vázquez v. Secretary of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

CIVIL 04-1449 (HL)                                  4

An X-ray taken of the lumbosacral spine on June 10, 2000 reflects a normal study. (Tr. at 139.) Dr. Carmen M. Lebron Maldonado wrote a note as a result of an evaluation made on June 15, 2000 and recommending that plaintiff be subjected to indefinite and absolute rest due to severe pain in the back and left knee. (Tr. at 184-85.) A psychiatric report dated May 1, 2001 by Dr. Rafael H. Miguez Balseiro resulted in a diagnosis of mood disorder secondary to a depressive physical condition, with a guarded prognosis. (Tr. at 140-45.) An evaluation of May 14, 2001 by internist Dr. Maria de Lourdes Telmont related the medications plaintiff was then taking: Oxycontin, 20 mg., Carisoprodol 35 mg., Lotrel 5 mg., Zoloft 25 mg. and Sonata 5 mg. The diagnostic impression was moderate to severe paralumbar muscle spasm with marked limitation of range of motion at lumbar region (flexion-extension=30), history of abnormal EMG compatible with nerve end compression and normal CT Scan and MRI by history. No neurological deficit was found in the physical examination. Also found were mental illness r/o moderate chronic depressive disorders, and controlled hypertension. (Tr. at 147-153.) An X-ray taken the same date reflected anterior spurs, lumbar spasm and no disc narrowing. The impression was mild osteoarthritis with spasm. (Tr. at 154.)

A psychiatric review technique form by clinical psychologist Orlando E. Reboredo Ph.D., dated June 4, 2001, reflects the presence of an affective disorder with disturbance of mood accompanied by psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking. (Tr. at 213-20.) There were moderate functional limitations. This assessment was affirmed by another clinical psychologist on December 22, 2001. (Tr. at 219.) A mental residual functional capacity assessment of June 4, 2001 by Dr. Reboredo showed few moderate limitations in understanding and memory,

CIVIL 04-1449 (HL)                              5

sustained concentration and persistence, social interaction and adaptation. The clinical psychologist opined that plaintiff was able to perform simple and detailed tasks, make simple decisions at work, cope with the stress and hazards of work, and could complete a normal workday or workweek on a sustained basis. (Tr. at 221-24.) This assessment was affirmed on review by another clinical psychologist on December 22, 2001. (Tr. at 222.) A July 3, 2001 physical residual functional capacity assessment by Dr. Gilberto Fragoso Ledesma, internist, reflects some exertional limitations based upon the lumbar condition, spasm, and limitation of range of motion. (Tr. at 204.) There were no other exertional limitations. (Tr. at 203-10.) This assessment was affirmed by another internist, Dr. Jose Pesquera, on December 21, 2001. (Tr. at 210.)

An extensive psychiatric report by psychiatrist Dr. Heriberto Lourido Ferrer dated March 12, 2002 contains a diagnosis of severe major depression. (Tr. at 227-38.) A report of September 10, 2002 by Dr. Lourido has similar findings. (Tr. at 249-64.)

At the administrative hearing before the administrative law judge held on September 23, 2002, plaintiff testified that he last worked at a children's home (La Casa de Todos) as a bus driver and in general maintenance in 2000. (Tr. at 29.) He left the job because of an accident which caused an injury to his lower back. (Tr. at 31). He still has much pain in his lower back. (Tr. at 32.) The pain goes to his anus and testicles, for which he takes medication. He takes Bextra which alleviates the pain. (Tr. at 33.) He hardly sleeps. He has problems in his ability to walk and is stiff when he stands after 20 minutes or after an hour of sitting. (Tr. at 33.) He gets cramps in his hands and fingers and has lost strength in his right hand. He cannot carry weight. His arms get stiff and locked. (Tr. at 34.) His legs get numb and were

CIVIL 04-1449 (HL)                             6

reported numb at the hearing. He has never been hospitalized for an emotional or psychiatric condition. His medications probably do not cause side effects. He drives little, to nearby places. (Tr. at 35.) He is nervous and forgets things. He has not request workmen's compensation. Once a week he gets migraine headaches which may last 3 days. At times he receives emergency room treatment and remains under observation. He also suffers from high blood pressure. (Tr. at 38-39.) The medication causes dryness of mouth, thirst, and stomach discomfort. He does not read and does not watch television. He needs help bathing.

Vocational expert Hector Puig related the many jobs which plaintiff has had and the skill levels and mental requirements of those jobs. He has no transferable skills. Asked hypothetically if plaintiff could perform sedentary work, the vocational expert said he could not perform any of his past relevant jobs. (Tr. at 42-43.) However, he could perform other jobs in the national economy such as classifier, hand packager, inspector, and labeler. (Tr. at 43.) With restrictions mentioned by the administrative law judge such as the back condition, not raising hands above the shoulder level, and need to frequently alter positions, then plaintiff would not be able to perform any work. (Tr. at 44.) The administrative law judge did not consider the mental condition and the vocational expert also did not consider the mental condition. (Tr. at 44-45.)

The administrative law judge noted in her rationale that plaintiff has severe spondylitis and affective disorders. The administrative law judge also notes that the record does not show neurological deficit and/or marked range of motion limitation. There was no muscle wasting weakness, atrophy, trigger joints, joint effusion, enlargement, inflammation, fasciculation or deformity. Treatment for pain has been conservative. (Tr. at 16-17.) The administrative law judge also concluded that,

CIVIL 04-1449 (HL)                                   7

notwithstanding Dr. Lourido's conclusions, the record as a whole, did not reflect a disabling mental condition. After a longitudinal analysis, the administrative law judge determined that the record did not reflect an emotional condition as severe and disabling as plaintiff alleged.

Plaintiff has submitted a thoughtful and reasoned memorandum detailing the evidence and attacking the manner in which the administrative law judge weighed the evidence, particularly her ignoring evidence of pain under the correct standard, reports of treating physicians, and conclusion as to plaintiff's residual functional capacity.

The administrative law judge addressed each of plaintiff's impairments and considered the evidence of record in relation to each, attributing varying degrees of importance to them depending on their sources, their bases, and the relationship the reports, findings or evidence had to each other.

In relation to the exertional and non-exertional impairments, the administrative law judge adequately weighed the same and applied the correct standards in such weighing process. For example, if the claimant's limitations are exclusively exertional, the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). The GRID, as it is known, consists of a matrix of the claimant's exertional capacity, age, education, and work experience. If the facts of the claimant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a), cited in 20 C.F.R § 416.969. In general, when a nonexertional limitation is found to impose no

CIVIL 04-1449 (HL)                              8

significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines is appropriate. See Rose v. Shalala, 34 F.3d 13, 15 (1st Cir. 1994); Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 2-3 (1st Cir. 1982). Even where a nonexertional impairment is significant, the GRID may still be used as "a framework for consideration of how much the individual's work capability is further diminished." 20 C.F.R. pt. 404 subpt. P. app. 2, § 200.00(e)(2) (1997); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989); Rodriguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Thus, if the applicant has nonexertional limitations, such as mental, sensory, or skin impairments, (see 20 C.F.R. pt. 404 subpt. P. app. 2, § 200(e)), that restrict his ability to perform jobs he would otherwise be capable of performing, then the GRID is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). Seavey v. Barnhart, 276 F.3d 1, 4 (1st Cir. 2001). Using the GRID as a framework for decision-making, the administrative law judge decided that plaintiff could perform certain sedentary work, although not a wide range. 20 C.F.R. § 416.967(a).

The administrative law judge further acknowledged allegations of severe disabling exertional and nonexertional impairments during the covered period. As the administrative law judge noted in her rationale, these were required to be considered under SSR 96-7p and 20 C.F.R. § 404.1529. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986). The factors to be weighed under the correct standard are the following:

```
(i)    Your daily activities;
(ii)   The location, duration, frequency, and intensity of
       your pain or other symptoms;
(iii)  Precipitating and aggravating factors;
```

CIVIL 04-1449 (HL)                            9

      (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
      (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
      (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
      (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p.

      While not following this particular outline, which is referred to in plaintiff's memorandum of law, the administrative law judge addressed the required points within the rationale as she found it necessary to address them in support of the final decision. (Tr. at 16-18.) The administrative law judge considered the relevant factors and explained the grounds for her reasoning, including observations made by herself and medical sources. The administrative law judge's conclusion considers the element of pain and is supported in her rationale.

      The administrative law judge considered the plaintiff's physician's reports and conclusions. Plaintiff argues in his memorandum of law that greater weight should have been given to the medical evidence from treating sources. However, it is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d at 3; Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002). The administrative law judge was not required to give the opinions controlling weight. See 20 C.F.R. § 404.1527(d); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).

CIVIL 04-1449 (HL)                                10

In short, the rationale behind the final decision reflects a balancing and weighing of evidence by the administrative law judge. The administrative law judge weighed evidence of plaintiff's subjective complaints against the evidence in the record, as well as conflicts in the evidence. While not disregarding plaintiff's allegations, the judge weighed them against the lack of medical findings as a whole which would tend to support such allegations. In reaching the final decision, the administrative law judge considered not only the testimony of plaintiff at the administrative hearing, but the testimony of the vocational expert who assumed hypothetical work restrictions, and concluded, based upon valid assumptions, that plaintiff could have made a vocational adjustment to perform at least four jobs available in the national economy. The testimony of the vocational expert as well as the mental residual functional capacity assessment and physical residual functional capacity assessments, as well as the psychiatric review technique form further assisted the administrative law judge in translating the relevant, bare medical data into functional and vocational terms.

The rationale of the administrative law judge is thorough and a reasonable weighing of the evidence does not point to a requirement that the Commissioner find plaintiff to be disabled under the Social Security Act. Looking at the evidence as a whole, and not to any particular report, document or testimony, and even if I might disagree with the final decision, I cannot find that the Commissioner's decision has failed to comply with the requirements of the substantial evidence rule. There being no good cause to remand, I recommend that the final decision of the Commissioner be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection

CIVIL 04-1449 (HL)                                  11

thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

    At San Juan, Puerto Rico, this 14th day of July, 2005.

                                      S/ JUSTO ARENAS
                            Chief United States Magistrate Judge